# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANIEL CACIOPOLI,<br>    *Plaintiff*,<br><br>v.<br><br>CAROLYN W. COLVIN, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,<br>    *Defendant*. | No. 3:16-CV-00949 (JAM) |

## RULING ON CROSS MOTIONS TO REMAND AND AFFIRM DECISION OF THE COMMISSIONER OF SOCIAL SECURITY

Plaintiff Daniel Caciopoli asserts that he has been disabled and unable to work since November 1, 2006, due to a number of conditions, including chronic neck, back, and knee pain; migraines; and depression. He brought this action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant Commissioner of Social Security, who denied plaintiff's claim for disability benefits and supplemental security income. For the reasons explained below, I will grant plaintiff's motion to remand the Commissioner's decision (Doc. #15), and deny defendant's motion to affirm the Commissioner's decision (Doc. #21).

### BACKGROUND

The Court refers to the transcripts provided by the Commissioner. *See* Doc. #11-1 through Doc. #11-21. Plaintiff filed an application for disability benefits and supplemental security income on May 16, 2011, alleging disability beginning November 1, 2006. Plaintiff's claim was denied initially and again upon reconsideration. Plaintiff then appeared and testified at a hearing before ALJ Ronald Thomas on October 3, 2013. The ALJ found plaintiff not disabled in a decision dated January 28, 2014. Doc. #11-4 at 81–99. The Appeals Council remanded

plaintiff's claim back to the ALJ for a new hearing and decision. *Id.* at 107–09. The Appeals Council directed the ALJ to correct a number of deficiencies on remand, including to give further consideration to the treating and non-treating source opinions, as well as to give further consideration to plaintiff's RFC "and provide [a] rationale with specific references to evidence of record in support of assessed limitations." *Id.* at 109.

On April 23, 2015, the same ALJ held a second hearing, at which plaintiff again testified. The ALJ issued a second decision on July 17, 2015, holding that plaintiff was not disabled within the meaning of the Social Security Act. Doc. #11-3 at 93–118. After the Appeals Council denied plaintiff's request for review of the ALJ's second decision, plaintiff filed this federal action.

### DISCUSSION

The Court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks and citation omitted); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*). Absent a legal error, this Court must uphold the Commissioner's decision if it is supported by substantial evidence and even if this Court might have ruled differently had it considered the matter in the first instance. *See Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

To qualify as disabled, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less

than 12 months," and "the impairment must be 'of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [a claimant] live[s] or in several other regions of the country," and "when there is a significant number of jobs (in one or more occupations) having requirements which [a claimant] [is] able to meet with [his] physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(a)–(b); *see also Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009).

To evaluate a claimant's disability, and to determine whether he qualifies for benefits, the agency engages in the following five-step process:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits [his] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed [in the so-called "Listings"] in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [he] has the residual functional capacity to perform [his] past work. Finally, if the claimant is unable to perform [his] past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122–23 (2d Cir. 2012) (alteration in original) (citation omitted); *see also* 20 C.F.R. § 416.920(a)(4)(i)-(v). In applying this framework, if a claimant can be found disabled or not disabled at a particular step, a decision will be made

3

without proceeding to the next step. *See* 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proving his case at steps one through four; at step five, the burden shifts to the Commissioner to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

*ALJ's Decision*

In his decision of July 17, 2015, the ALJ held that plaintiff was not disabled within the meaning of the Social Security Act. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since November 1, 2006. Doc. #11-3 at 96. At step two, the ALJ found that plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical and lumbar spine, degenerative joint disease in the bilateral knees, headaches, affective disorders, and polysubstance dependence disorder. *Ibid*.

At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Ibid*. In particular, the ALJ considered listings 1.02, 1.04, 11.03, 12.04, and 12.09, and concluded that plaintiff's impairment did not satisfy the criteria of these listings. *Id.* at 96–99.

At step four, the ALJ found that plaintiff had "the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)," but with the following additional limitations: plaintiff "can occasionally bend, twist, squat, climb, crawl, balance, and kneel; and has occasional difficulty with concentrating on detailed or complex tasks." *Id.* at 99. In formulating this RFC, the ALJ gave "little weight" to every medical opinion in the record, including the opinions of treating physicians Dr. Tokuno, Dr. Hyson, and Dr. Wilkens; consultative examiners Dr. Karlin, Dr. Campagna, and Dr. Mongillo; and the Disability

4

Determination Services (DDS) consultants. *Id.* at 101–04. The ALJ also found plaintiff's testimony about his symptoms to be only partially credible. Specifically, the ALJ found that while plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "overall credibility is poor and . . . his degree of pain is less severe than he alleges." *Id.* at 104. The ALJ drew this conclusion based on his findings with respect to plaintiff's noncompliance with recommended treatment, plaintiff's inconsistent statements throughout the record, and plaintiff's "secondary motives" for seeking treatment (obtaining benefits and obtaining narcotic pain medications). *Id.* at 105–08.

Also at step four, the ALJ concluded that plaintiff could not perform his past relevant work as an auto body helper or construction laborer. *Id.* at 108. At step five, after considering plaintiff's age, education, work experience, and residual functional capacity (RFC), the ALJ concluded that there are jobs that exist in significant numbers in the national economy that plaintiff could perform. This finding relied on the testimony of vocational expert Albert Sabella, who testified at the administrative hearing that an individual with plaintiff's RFC and limitations (as determined by the ALJ) could perform the requirements of representative occupations such as electronics worker, electrical equipment inspector, and machine molding tender. *Id.* at 110. The ALJ ultimately concluded that plaintiff was not disabled within the meaning of the Social Security Act. *Ibid*.

The Appeals Council denied plaintiff's request for review on April 21, 2016. Plaintiff subsequently filed this federal action in June 2016, asking the Court to reverse the Commissioner's decision or remand the case for rehearing. Defendant has cross-moved to affirm the Commissioner's decision.

### *Whether the ALJ's RFC finding was supported by substantial evidence*

Plaintiff argues that the ALJ erred in two interrelated respects: (1) that the ALJ failed to properly weigh the medical opinion evidence, in violation of the treating physician rule; and (2) that the ALJ failed to provide medical support for his residual functional capacity determination, given his rejection of the available medical opinion evidence. In essence, these arguments amount to an assertion that the ALJ's RFC finding was not supported by substantial evidence. I agree with plaintiff and will remand the case on these grounds.

### i. *Treating physician rule*

Plaintiff first challenges the ALJ's decision to grant "little weight" to the opinions of plaintiff's treating physicians, Dr. Tokuno, Dr. Hyson, and Dr. Wilkens. The law is clear that the Commissioner must apply the "treating physician rule" when considering "the nature and severity of [a claimant's] impairment(s)." 20 C.F.R. § 416.927(d)(2). According to the treating physician rule, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Burgess*, 537 F.3d at 128 (internal quotation marks omitted).

Even if a treating physician's opinion is not given controlling weight, the ALJ must consider a number of factors to determine the proper weight to assign, including "the [l]ength of the treatment relationship and the frequency of examination; the [n]ature and extent of the treatment relationship; the relevant evidence . . ., particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Id*. at 129 (internal quotation marks and citations omitted) (alterations in original). After considering these

factors, the ALJ is required to "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion. . . . Failure to provide such 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id.* at 129–30 (internal quotation marks and citations omitted); *see also* 20 C.F.R. § 416.927 ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.").

The record in this case contained opinions from three treating physicians: plaintiff's neurologist Dr. Tokuno, his primary care physician Dr. Hyson, and his psychiatrist Dr. Wilkins. Dr. Tokuno began treating plaintiff in 2010 and submitted several assessments of plaintiff's limitations. In September 2013, Dr. Tokuno diagnosed plaintiff with cervicalgia, neck muscle spasm, cervicogenic headaches, and lumbar facet arthropathy. Doc. #11-14 at 2. He based these diagnoses on clinical findings of limited range of motion, tenderness, muscle spasms, trigger points, and positive straight leg raising. *Id.* at 2–3. Dr. Tokuno indicated in a questionnaire that in an eight-hour workday, plaintiff could sit for less than an hour and stand or walk for less than an hour, that plaintiff would need to get up and move around every thirty minutes, and that plaintiff could occasionally lift (but not carry) up to ten pounds. He also submitted a narrative letter in September 2013, in which he described plaintiff's conditions in more detail and tied these conditions to his physical exam findings. The letter described plaintiff as "seriously disabled," opining that plaintiff could not sit for more than thirty minutes at a time and could not lift more than five pounds of weight in either arm for more than a few seconds. *Id.* at 9.

In March 2015, Dr. Tokuno diagnosed plaintiff with chronic low back pain, chronic neck pain, and headaches. He based these diagnoses on an MRI of the cervical spine, as well as on clinical findings of limited range of motion, tenderness, muscle spasm, trigger points, and

7

abnormal gait. Again, Dr. Tokuno indicated that in an eight-hour workday, plaintiff could sit for less than an hour and stand or walk for less than an hour. He also noted that plaintiff was likely to be absent from work more than three times a month due to his medical issues. *Id.* at 38–43.

Dr. Hyson, plaintiff's treating primary care physician, completed a disability impairment questionnaire in February 2015. She listed plaintiff's diagnoses as chronic pain and depression. Like Dr. Tokuno, she opined that in an eight-hour workday, plaintiff could sit for less than an hour and stand or walk for less than an hour. *Id.* at 29. She noted that plaintiff would need to get up every fifteen to twenty minutes, that plaintiff could occasionally lift (but not carry) up to five pounds, and that plaintiff would be likely to be absent from work more than three times a month. *Id.* at 31.

Dr. Wilkins, plaintiff's treating psychiatrist, submitted a psychiatric impairment questionnaire in September 2013, about a month after she began seeing plaintiff. She diagnosed plaintiff with "major depressive disorder, recurrent, severe." Doc. #11-12 at 111. She also explained that plaintiff's "depression and pain have a bidirectional relationship," where "each exacerbates the other." *Id.* at 117. After discussing plaintiff's symptoms and limitations (including a number of "marked" limitations), Dr. Wilkins opined that plaintiff's "severe depression and chronic pain . . . render him unable to work in any capacity at this time." *Id.* at 118. She also submitted a narrative letter on the same date, in which she described plaintiff's symptoms, indicated that he had been prescribed an antidepressant medication, Nortriptyline, and noted that she planned to see him every two weeks for medication management and supportive psychotherapy. *Id.* at 120.

In February 2015, Dr. Wilkins noted that plaintiff's depression had "worsened considerably over the past year." Doc. #11-14 at 36. She also noted that plaintiff had missed

8

several appointments due to lack of transportation, but that she had kept in touch with him by phone. She concluded that plaintiff "remains severely disabled due to depression." *Ibid*.

To the extent that the ALJ offered reasons for his decision to grant little weight to the foregoing opinions, the ALJ's stated reasons are unpersuasive and do not constitute "good reasons" as required by the regulations. For example, the ALJ conclusorily asserted that Dr. Tokuno's and Dr. Hyson's opinions are "not supported by rationale based on specific evidence," without addressing the specific clinical and laboratory findings on which the doctors' opinion are explicitly based.

The ALJ also justified its rejection of Dr. Tokuno's and Dr. Hyson's opinions by asserting that the ALJ would have expected to see more frequent and aggressive treatment, given the alleged limitations. But the Second Circuit has cautioned against discounting the opinion of a treating physician merely because the physician recommended a conservative treatment regimen. *See Burgess*, 537 F.3d at 129. Moreover, Dr. Hyson's questionnaire makes clear that plaintiff's treatment has included a wide variety of non-prescription and prescription drugs (including powerful narcotics), as well as physical therapy, Botox injections, acupuncture, and the use of braces and inserts. Doc. #11-14 at 28. In the absence of any evidence that the limitations identified by plaintiff's doctors call for some other kind of treatment (*e.g.*, surgery), the ALJ's comment about treatment does not constitute a "good reason" for rejecting the treating physicians' opinions. *See, e.g.*, *Hamm v. Colvin*, 2017 WL 1322203, at *25 (S.D.N.Y. 2017) ("the ALJ has pointed to nothing in the record to suggest that Plaintiff was an eligible candidate for more aggressive medical treatment, such as surgery"); *Burgess*, 537 F.3d at 129 ("The fact that a patient takes only *over-the-counter* medicine to alleviate her pain may . . . help to support the Commissioner's conclusion that the claimant is not disabled if that fact is accompanied by

9

other substantial evidence in the record, such as the opinions of other examining physicians and a negative MRI.") (emphasis added).

The ALJ rejected Dr. Wilkins's psychiatric opinion for a similar treatment-related reason, noting that he would have expected to see inpatient hospitalizations or long-term, intensive outpatient treatment given the alleged psychiatric/mental limitations. But there is no evidence in the record to support the ALJ's view that more aggressive treatment (or inpatient hospitalization) would be appropriate given plaintiffs' alleged limitations.

The ALJ also relied on minor, immaterial inconsistencies to reject the treating physicians' opinions. Specifically, the ALJ noted that the spinal impairment questionnaire and summary impairment questionnaire submitted by Dr. Tokuno on the same day (March 13, 2015) provided conflicting answers as to whether plaintiff had significant limitations in reaching, handling, or fingering. But while this inconsistency could provide a basis to doubt those specific limitations, it does not provide grounds for rejecting Dr. Tokuno's opinions as to plaintiff's other abilities and limitations, such as the ability to sit, stand, or walk.

The ALJ also noted that the limitations described by Dr. Hyson are not consistent with activities performed by plaintiff, "such as riding motorcycles and walking his dog twice a day, and running errands," Doc. #11-3 at 102. Those activities were noted in medical records from the VA Hospital in 2010, and they do not undermine the treating physicians' later assessments from 2013 and 2015.

The ALJ rejected not only the treating physicians' opinions, but also the opinions of the consultative examiners and the DDS consultants, which were largely consistent with the opinions of the treating physicians. This blanket rejection of *all* the medical opinions in the record was in further violation of the treating physician rule. *See, e.g.*, *Rolon v. Comm'r of Soc. Sec.*, 994 F.

Supp. 2d 496, 509 (S.D.N.Y. 2014) ("[S]ince the ALJ did not cite *any* medical opinion to dispute the treating physician['s] conclusions . . . regarding the nature and severity of [claimant's] impairments, the ALJ did not provide good reasons as required by the treating physician rule."); *Sappah v. Colvin*, 2017 WL 1194235, at *6 (N.D.N.Y. 2017) ("The ALJ assigned 'limited' or 'little' weight to all of the medical opinions of record, and in so doing, he failed to set forth good reasons in rejecting the treating physicians' opinions, as required by the treating physician rule.").

The ALJ believed that plaintiff was exaggerating his symptoms and that the source opinions were similarly exaggerated as a result. But the assessment of plaintiff's credibility is a separate inquiry from the assessment of medical opinion evidence under the Social Security Regulations. *See* SSR 96-7p. An adverse credibility finding as to a plaintiff is not sufficient grounds in itself for rejecting the opinions of plaintiff's treating physicians. Treating physicians are medical professionals who are in a position to make their own assessments about a plaintiff's credibility (in addition to factoring in their objective medical findings); here, all three treating physicians indicated that they did not think that plaintiff was malingering. *See* Doc. #11-4 at 7, 27, 32.

### ii. Lack of medical support for RFC finding

Plaintiff's second argument flows from the first. Plaintiff contends that the ALJ failed to provide medical support for his determination that plaintiff is capable of performing light work. I agree with plaintiff and conclude that the ALJ's RFC determination is not supported by substantial evidence.

Under SSR 96-8p, "the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory

findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." SSR 96-8p.

The ALJ's RFC assessment in this case did not comport with SSR 96-8p. After granting little weight to all of the available medical source opinions, the ALJ found "that the claimant has the residual functional capacity to perform light work except he can occasionally bend, twist, squat, climb, crawl, balance, and kneel; and has occasional difficulty with concentrating on detailed or complex tasks." Doc. #11-3 at 108. The ALJ noted that his conclusion was "based on the foregoing evidence," *ibid.*, but did not cite to any specific evidence in the record to support the RFC determination.

"Light work" involves "a good deal of walking or standing," or "sitting most of the time with some pushing and pulling of arm or leg controls," as well as "lifting [up to] 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567 and § 416.967. The ALJ's determination that plaintiff can perform light work is unsupported by the medical opinions in the record, and the ALJ did not explain what other medical (or nonmedical) evidence in the record supported his conclusion as to plaintiff's RFC, despite the fact that he was explicitly directed to do so by the Appeals Council on remand. *See* Doc. #11-4 at 109. Instead, the ALJ focused on evidence related to plaintiff's credibility and the exaggeration of his symptoms, rather than on positive evidence of the limitations found.

In short, the ALJ "improperly substituted his own opinion for that of a physician." *Staggers v. Colvin*, 2015 WL 4751123, at *2 (D. Conn. 2015). Even if the ALJ had been justified

12

in rejecting all of the medical opinion evidence in the record, he would have had a duty to develop the record by requesting additional medical opinion evidence. *Id.* at *3 ("in the absence of any RFC assessments from treating or examining physicians, an ALJ has an affirmative duty to develop the record by obtaining such assessments"); *see also Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (discussing ALJ's duty to develop the record).

In my view, an ALJ may not simply adjust the RFC upward based on his own assessment that a claimant is malingering, without specific evidence to support that RFC. Here, the ALJ noted evidence that plaintiff could ride his motorcycle and walk his dog, but this evidence of plaintiff's activities predated the treating physicians' opinions by several years. Moreover, the ALJ offered no evidence whatsoever to support his conclusion that plaintiff could lift objects up to twenty pounds, carry objects of ten pounds, or sit, stand, or walk for more than an hour. *See* 20 C.F.R. § 404.1567 and § 416.967.

Based on a recent Second Circuit summary order, the Commissioner argues that a medical source statement or formal medical opinion is not necessarily required where the record contains sufficient evidence from which an ALJ can assess the claimant's RFC. *See* Doc. #21 at 11 (citing *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 6–9 (2d Cir. 2017)). But unlike in *Monroe*, the ALJ here did not base his RFC determination on the underlying medical records or "years' worth of treatment notes," *id.* at 9. Even under the cases cited by the Commissioner, the ALJ's RFC determination must be supported by substantial evidence and must be "consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). The ALJ in this case did not cite specific evidence from the record to support his conclusion that plaintiff had the capacity to perform light work, nor was the ALJ's RFC finding consistent with the record as a whole.

Accordingly, I will remand this case for reconsideration of plaintiff's RFC. On remand, the ALJ should reconsider the treating physicians' opinions in accordance with the treating physician rule. The ALJ should also ensure that the RFC determination is supported by specific medical facts as required by SSR 96-8p.

## CONCLUSION

For the reasons explained above, plaintiff's motion to remand the Commissioner's decision (Doc. #15) is GRANTED. Defendant's motion to affirm the Commissioner's decision (Doc. #21) is DENIED. The case is remanded to the Commissioner for further proceedings consistent with this opinion.

It is so ordered.

Dated at New Haven, Connecticut, this 1st day of August 2017.

        /s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge